655 F.2d 534
 15 ERC 2039, 11 Envtl. L. Rep. 20,929
 VIRGINIA ELECTRIC AND POWER COMPANY et al., Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al., Respondents.
Natural Resources Defense Council, Inc., Alabama Power Co.
et al., and Tenneco Oil Company, Intervenors.
 No. 79-1347 and Consolidated Cases.*
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1981.
Decided April 28, 1981.
 
 George C. Freeman, Jr., William A. Anderson, II, J. Kennerly Davis, Jr., Turner T. Smith, Jr., E. Gabriel Smith, Richmond, Va., for Va. Elec. & Power Co.
 
 
 1
 James A. Biddsion, Jr., W. Robert Buchanan, Baltimore, Md., for Baltimore Gas & Elec.
 
 
 2
 Alan W. Eckert, Richard G. Stoll, Jr., Washington, D. C., David T. Buente, Pittsburgh, Pa., for U.S. Environmental Protection Agency.
 
 
 3
 Randulph R. Mahan, for South Carolina Elec. & Gas Co.
 
 
 4
 J. Taylor Banks, Washington, D. C., Alfred B. Smith, Houston, Tex., Ronald J. Wilson, Charles M. Darling, Washington, D. C., for Natural Resources Defense Council, Inc.
 
 
 5
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 
 MURNAGHAN, Circuit Judge:
 
 6
 In a symbolic sense, the procedural issue we now consider may provide in the 1980's a close resemblance to the land rush when the Oklahoma Territories were opened.
 
 
 7
 It concerns judicial review of extensive amendments proposed on August 21, 1978 to regulations of the United States Environmental Protection Agency ("EPA") governing the National Pollutant Discharge Elimination System ("NPDES") permit program under the Clean Water Act ("CWA"). 43 Fed.Reg. 37078-37134. The amended regulations were formally promulgated on June 7, 1979. 44 Fed.Reg. 32854-32956.
 
 
 8
 Almost immediately thereafter, the EPA, on June 14, 1979, proposed Consolidated Permit Regulations applicable to several permit programs, namely those under the CWA, under The Resource Conservation and Recovery Act ("RCRA"), under The Safe Drinking Water Act ("SDWA"), and under The Clean Air Act ("CAA"). 44 Fed.Reg. 34244-34344. Not surprisingly, the portions of the proposed Consolidated Regulations applicable to the NPDES permit program under the CWA were virtually identical to the June 1979 regulations addressed exclusively to the CWA.
 
 
 9
 The final Consolidated Permit Regulations were issued on May 19, 1980. 45 Fed.Reg. 33290-33513 (40 C.F.R. Parts 122, 123, 124 and 125).
 
 
 10
 The equivalent of the Oklahoma Territories stampede had its first running with respect to the 1979 NPDES regulations under the CWA. 28 U.S.C. § 2112(a) provides in pertinent part:
 
 
 11
 If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency, board, commission, or officer concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted.... For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.
 
 
 12
 Those who entered the race comprised a very substantial sampling, if by no means all, of the American industrial confraternity. Simultaneous petitions for review were filed, under § 509(b)(1)[1] of the CWA in the District of Columbia Circuit, the Fourth Circuit, and the Fifth Circuit on June 14, 1979 (the date set by EPA for judicial review). As the petitions for review were simultaneous, none was the first instituted proceeding. The proceeding filed in the Fourth Circuit was instituted, inter alia, by Virginia Electric and Power Co. ("VEPCO"). In the van in the District of Columbia Circuit was The National Resources Defense Council, Inc. ("NRDC"). Following consultation among the circuits, it was agreed that the Fourth Circuit should be the court to determine venue and, as a consequence, all cases seeking review of the 1979 NPDES regulations under the CWA (including later filed cases in the Third, Ninth and Tenth Circuits) have subsequently been transferred to the Fourth Circuit. A number of them have been consolidated in the case which now confronts the Court.
 
 
 13
 The earliest date for filing a proceeding to review the 1980 Consolidated Regulations was set for June 2, 1980 at 1:00 p. m. The churning Conestoga wagons again crossed the line simultaneously in the District of Columbia Circuit, the Fourth Circuit, and the Fifth Circuit. VEPCO, et al., attempting to build on their 1979 preferred position, also filed a motion to amend the June 14, 1979 petition to have those portions of the NPDES provisions under the CWA contained in the 1980 regulations treated as extensions of the 1979 regulations and, therefore, as relating back to and being incorporated in the 1979 regulations.
 
 
 14
 NRDC on July 29, 1980, and EPA, on August 22, 1980, moved for transfer of the 1979 and 1980 cases concerning the NPDES under the CWA to the District of Columbia Circuit.
 
 
 15
 In general, the Consolidated Regulations, insofar as they derived their existence from statutes other than the CWA, could only be reviewed in the District of Columbia Circuit. 42 U.S.C. § 6976(1) as to the RCRA, 42 U.S.C. § 300j-7(a)(1) as to the SDWA and 42 U.S.C. § 7607(b)(1) as to the CAA. The question for us to resolve is whether we should sever or continue severance of the portions of the 1980 Consolidated Permit Regulations dealing with the CWA from the companion RCRA, SDWA, and CAA regulations.
 
 
 16
 Our review of the problem satisfies us that, simply on discretionary grounds, we should not seek such a result. It would lead to a divided and quite possibly disparate approach in a matter of extraordinary complexity and importance. Congressional considerations favoring an approach which would allow the earliest filing private party affected by the regulations to opt for its home grounds as the place to conduct the judicial contest pale into insignificance when other considerations are taken into account.
 
 
 17
 There are manifestly interrelated aspects to the four acts here involved.[2] The inherent reasonableness in a consolidated approach by the EPA, with the statutes mandating review as to three out of the four statutes exclusively by the District of Columbia Circuit, suffices to reject unparticularized suspicions of an attempt on the part of the EPA to manipulate the choice of the reviewing court.
 
 
 18
 The situation would be quite different if the only regulations concerned were those under the CWA. Then there would be force in arguments that the legislative history of § 509(b) reflects a congressional policy not to centralize review in Washington. Such a congressional policy under one statute alone, however, subsides in importance where four closely interrelated statutory enactments make eminently reasonable a consolidated regulations approach.
 
 
 19
 Therefore, it is our determination that "for the convenience of the parties in the interest of justice" we should transfer the cases to the District of Columbia Circuit.
 
 
 20
 Inasmuch as we have resolved the matter on discretionary grounds of convenience of the courts and of the parties, of judicial economy, and of the advantages of a coherent single court review, it is not necessary that we consider a subsidiary contention of those urging transfer. The contention relates to a possible deficiency in jurisdiction of courts of appeal generally under § 509(b), the District of Columbia Circuit, as well as ourselves. We intend to intimate no opinion one way or the other as to whether there is or is not jurisdiction in the courts of appeal. Nor do we consider or decide the corollary proposition that, if jurisdiction should be generally lacking in the courts of appeal, the District of Columbia Circuit is in a superior position to remedy the defect, due to its jurisdiction under the other three statutes, which might supply a basis for an ancillary jurisdiction of the NPDES petitions for review.
 
 
 21
 In sum, as a matter of discretion, we decline to separate out the NPDES portion under the CWA of the 1980 Consolidated Regulations for review by the Fourth Circuit on the grounds that that portion of the 1980 Consolidated Regulations is actually a development and extension of the 1979 NPDES regulations under the CWA. To the extent that any prior order proceeds on such an approach, it is here and now terminated, and cases seeking review of the 1980 Consolidated Regulations are hereby transferred to the District of Columbia Circuit. We further hold, in exercise of our discretion, that, since the 1980 Consolidated Regulations to be reviewed in the District of Columbia Circuit will include NPDES regulations under the CWA, for the convenience of the parties and the interests of justice, cases seeking review of the 1979 NPDES regulations should be transferred to the Court of Appeals for the District of Columbia Circuit. It is so ordered.
 
 
 22
 JAMES DICKSON PHILLIPS, Circuit Judge, concurring:
 
 
 23
 I concur in the result reached by the court in its discretionary decision to transfer all the petitions pending in this court to the District of Columbia Circuit. Faced with a procedural muddle defying resolution on any legally principled basis, I cannot quarrel with a decision to fall back on judicial statesmanship as the only proper way to deal with a fait accompli. But I have so substantial a sense of frustration and practical concern for the litigants, their counsel, and the three courts expensively and lengthily involved in the attempt to cope in an orderly and principled way with the muddle that I write separately simply to hold it up for whatever scrutiny it may command from those empowered to resolve or at least reduce it. As this case reveals, the courts have not that power or capability. This case at least illustrates that this is no way to run a judicial railroad or wagon train. In this important matter we have only been concerned so far with getting the case in the proper court.
 
 
 24
 The particular muddle created here by the law and specific events commenced with the three simultaneous filings of petitions for review of the 1979 NPDES regulations in the Fifth, Fourth and D. C. Circuits (followed by others in several other circuits). Though the requirement of 28 U.S.C. § 2112(a) that all challenges to a single agency order shall be heard in one court is helpfully implemented by a prescribed two-step process by which all petitions for review are first transferred to the court of first filing, which then makes a venue determination "for the convenience of the parties in the interest of justice," the statute makes no provision for resolving a tie in first filings. A tie-breaking procedure therefore has somehow to be fabricated by the affected courts. In this case the courts were driven to the possibly unseemly expedient of drawing lots to designate a "surrogate" court of first filing. See Virginia Electric & Power Co. v. EPA, 610 F.2d 187, 189 n. 5 (4th Cir. 1979).
 
 
 25
 The Fourth Circuit having been designated the court of first filing by lot, the cases were then transferred from all other circuits to this court and consolidated for eventual determination of venue. This procedure which to this point had at least the virtue of being agreed upon by all the affected courts was then complicated by the promulgation of the 1980 Consolidated Regulations. As to these, simultaneous petitions for review were again filed in the Fourth, Fifth and D. C. Circuits. VEPCO, et al., as the panel opinion notes, also filed a motion to amend its 1979 petition to include challenge to the NPDES portion of the 1980 Consolidated Regulations. By this amendment it was claimed by VEPCO that its 1980 challenge related back to the date of filing of the 1979 challenge so that the former should be considered first filed, making the Fourth Circuit the court to determine venue with respect to the 1980 petitions for review of the NPDES portions of the Consolidated Regulations as well as the 1979 petitions. Electric Utilities' Opposition to NRDC's Motion to Transfer at 5 n. 4 (citing BASF Wyandotte Corp. v. Costle, 582 F.2d 108, 110 (1st Cir. 1978)).
 
 
 26
 Unwilling to go along again with an inter-court conference procedure for determining a "surrogate" court of first filing, the D. C. Circuit issued an order on September 11, 1980 (amended September 12), holding that venue for review of all the 1980 Consolidated Regulations was proper in that court and requesting that EPA seek transfer of all other cases to the D. C. Circuit. In its memorandum opinion issued on November 4, 1980, the court held that the 1980 Consolidated Regulations were the same order for purposes of § 2112(a). Because a single order must be reviewed by one court and because portions of these regulations may be reviewed only in the D. C. Circuit, venue would only be proper there. Natural Resources Defense Counsel, Inc. v. EPA, No. 80-1607, slip op. at 10-11 (D.C.Cir. Nov. 4, 1980). The other two courts, presumably charged with some initial responsibility in this matter being equally courts of first-filing were by this action left somewhat in limbo. This created the following legal impasse.
 
 
 27
 Prior to the enactment of § 2112(a), a court of appeals did not obtain jurisdiction of a petition for review of an agency order until the agency filed the record. In enacting § 2112(a), Congress was concerned with eliminating this potential for manipulation of the forum by the agency when petitions for review had been filed in several courts. Natural Resources Defense Counsel, Inc. v. EPA, slip op. at 6 (citing S.Rep.No. 2129, 85th Cong., 2d Sess., 204 (1958)); BASF Wyandotte Corp., 582 F.2d at 111 (citing S.Rep.No. 2129, and 104 Cong.Rec. 17537 (1958) (remarks by Sen. Eastland)). The first-filing provision was the supposed solution. Integral to its operation is identification of the "same order" which is to be the subject of unitary review by a single court. If this is itself a disputable matter, it presumably must be resolved by the first-filing court as a part of its venue determination. Where there are multiple courts of first filing by reason of ties, then presumably each of the affected courts may have equal power to adjudicate this sometimes critical matter. Its resolution may indeed control the very question of first filing. Here the Fourth and Fifth Circuits have not exercised the presumed power, while the D. C. Circuit has, but with no apparent basis for asserting that its power to resolve the matter is exclusive.
 
 
 28
 I think that under the circumstances this court has an obligation to attempt an independent determination of the scope of the order as to which it is by agreement the "surrogate" court of first filing, as that may bear upon the propriety of transferring the various petitions filed with it. When that exercise is undertaken here, it demonstrates the intractability of the ultimate transfer issue before us and the need for extra-judicial solution of the problems here illustrated.
 
 
 29
 Courts construing the meaning of "same order" under § 2112(a) have read the term broadly. See, e. g., ACLU v. FCC, 486 F.2d 411 (D.C.Cir.1973). The First Circuit, confronted with the question whether interim and final regulations issued two years apart were a single order, considered two methods of analysis: finding a single order where there is a substantial substantive similarity or, alternatively, where there is a common procedural origin. BASF Wyandotte Corp. v. Costle, 582 F.2d at 112. In that case, the court found that the evaluation of the administrative background and cumulative record offered a more reasonable test, for the content-based test would require "considerably more knowledge of the often complicated substantive content of the orders than would a rule requiring no more than an evaluation of the background proceedings out of which the regulations arose." Id.
 
 
 30
 BASF Wyandotte Corp. is well reasoned, and presents the most practical approach for courts confronted with sequential agency orders. Even so, this reading of the § 2112(a) same order provision does not fully resolve this case. Were we to subject this case to that analysis, we could plausibly treat the 1979 NPDES interim regulations and the NPDES portions of the Consolidated Regulations as a single order, because they arose from the same administrative background and record. Under the same analysis, the 1980 Consolidated Regulations, while substantively dissimilar, could also be treated as a single order, for they were promulgated simultaneously, arose from the same administrative background and share a common record. If this latter analysis were carried forward it would compel the conclusion that the NPDES portions of the 1980 Consolidated Regulations cannot be severed, being part of that order, so that the 1979 NPDES interim regulations must be drawn into the 1980 Consolidated Regulations for purposes of review. The EPA makes this argument in support of its motion to transfer, EPA Brief at 7, and the D. C. Circuit so found, stating that there was "no authority for splitting up a single order for review in different circuits merely because of that order's procedural history." Natural Resources Defense Counsel, Inc. v. EPA, slip op. at 10.
 
 
 31
 From this point one would be led inexorably to the conclusion that unitary review of the whole mass in the D. C. Circuit is practically mandatory, for three-fourths of the 1980 Consolidated Regulations must be reviewed there. But the same proposition can be advanced to prevent "splitting" the NPDES portion of the 1980 consolidated regulations from the 1979 NPDES regulations "for review in different circuits," if a preliminary determination is made that they are the same order. In my judgment, that determination could be made by this court with as much reason and authority as the reason and authority underlying the D. C. Circuit's determination that the 1980 consolidated regulations constituted a single order that ought not be split for separate review. The most correct view within developed doctrine is probably that here there are overlapping "single orders" a conclusion that obviously does not resolve the venue problem by its own force.
 
 
 32
 If that be the best view of things on a single order analysis, I would decline to transfer the 1979 and 1980 NPDES petitions despite the risk of inconsistent adjudications in the area of overlap if we could say with fair assurance that the convenience of the parties and interests of justice would be at least as well served by their retention here as by their transfer there. This would at least preserve the integrity of the processes which constituted this court the surrogate court of first filing with respect to the 1979 regulations and which still stand.
 
 
 33
 In the final analysis, I cannot say this. The convenience of the parties and their counsel aside from the sensibilities of some is likely to be equally well served by review in either of these geographically contiguous circuits. Justice to the parties gives me more pause. The result of transfer to the D. C. Circuit is indubitably to thwart certain expectations and preferences had by those petitioners who were interested enough in a Fourth Circuit forum to race for it. When the basis for those expectations is explored however, it is revealed to be largely ephemeral in substantive terms. While Congress has seen fit to provide for centralized review of challenges to some agency regulations and forum of choice review in others, the forum choice given is in reality most tenuous when multiple circuit challenges are filed. Chance rather than choice is likely the most profound determinant in those situations. Obviously there cannot be weighed in the balance any forum preference based upon perceptions by any of the parties that one or the other forum is likely to be more substantively favorable to their positions.
 
 
 34
 We are left then with those considerations which the panel opinion rightly identifies as the weightiest: avoidance of duplicative adjudication, permitting a unitary review, the D. C. Circuit's dominant jurisdiction in respect of the 1980 consolidated regulations, the possibility that the courts of appeals generally lack jurisdiction in respect of the NPDES regulations. With the problem unsusceptible to rational solution by a "same order" or other legal analysis, I cannot quarrel with the decision to transfer on the basis of these factors.
 
 
 35
 There should be a better way.*
 
 
 
 *
 Nos. 79-1567; 79-1592; 80-1380, 80-1381, 80-1404; 80-1413; 80-1452; 80-1475; 80-1524; 80-1546
 
 
 [1]
 33 U.S.C. § 1369(b)(1)
 
 
 [2]
 For example, Subparts A (General Program Requirements) of Parts 122, 123, and 124 apply equally to programs under the CAA, the RCRA, the SDWA, and the CWA. Separating judicial review of each Subpart A as it applies to the NPDES under the CWA from review of each Subpart A as it applies to other programs makes little sense either in terms of judicial consistency or economy. Many sections in each Subpart contain uniform requirements for each program. See, e. g., 40 C.F.R. § 122.6 (signatories to permit applications and reports); 40 C.F.R. § 122.7 (conditions applicable to all permits); 40 C.F.R. § 123.14, .15 (criteria and procedures for withdrawal of EPA approval of a state program); 40 C.F.R. § 124.6 (draft permits); 40 C.F.R. § 124.9 (administrative record for draft permits)
 
 
 *
 On this score, it may be appropriate to take judicial notice that the Administrative Conference of the United States on December 11, 1980 put forward a formal Recommendation looking to a better way. See 49 U.S.L.W. 2444. The gist of the Recommendation is that Congress should amend § 2112(a) to provide a tie-breaking mechanism to deal with the simultaneous first-filing problem. The proposed mechanism would take the filing courts out of the picture and give this job over to "an appropriate official body, such as the Administrative Office of the Courts" which would determine the venue-fixing court by "random selection." Id
 In keeping with the purpose of this opinion, this effort is surely to be applauded. Purely in the interests of encouraging its effective consummation, one mild caveat to the precise mechanism proposed may be noted. As the instant case reveals, there can be embedded in the merely technical problem of simultaneous filings legal or factual issues requiring judicial determination most notably, as here, a "same order" scope issue. Perhaps the most, or only, "appropriate official body" to deal effectively with the problem is one with judicial power to resolve any such underlying issues if they are raised. As this case also reveals, that body should probably not be any of the first-filing courts or indeed any single court of appeals. One possibility for consideration is the Judicial Panel on Multi District Litigation with appropriately enlarged powers under 28 U.S.C. § 1407(d) that could include the eventual power to designate the proper venue court, applying the convenience and interests of justice standard of § 2112(a).